# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALAN KOSZYK, ANDREW NOBLE, LUON SPEARMAN, KEVIN GRIFFIN, STANLEY KINCAID, MICHAEL TERRY, and RAKESH CHOPRA, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| v. | No. 16-CV-03571 |
| COUNTRY FINANCIAL a/k/a CC SERVICES, INC., | |
| Defendant. | |

### JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Alan Koszyk, Andrew Noble, Luon Spearman, Kevin Griffin, Stanley Kincaid, Michael Terry, and Rakesh Chopra (collectively, the "Named Plaintiffs"), individually and on behalf of the class of individuals that they seek to represent (collectively with Named Plaintiffs, "Plaintiffs"), in the matter *Koszyk et al. v. Country Financial a/k/a CC Services, Inc.*, No. 16 Civ. 3571, and Defendant CC Services, Inc. ("Defendant") (together with Plaintiffs, the "Parties").

### RECITALS

**WHEREAS**, the Named Plaintiffs have filed a Collective Action Complaint asserting claims against Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for the alleged failure to pay overtime compensation to Plaintiffs (the "Litigation"); and

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all claims asserted in the Litigation and those claims that could have been asserted, relating to the non-payment of overtime to individuals employed in the position of Employee Financial Representatives ("EFRs"), or similar titles, for overtime worked during the period from an EFRs' hire date through one week following the completion of CAL School 1 (or through the EFRs' date of termination, whichever is earlier), from June 3, 2013, to July 15, 2016; and

**WHEREAS**, Defendant denies all of the allegations made by Named Plaintiffs in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

**WHEREAS**, the Parties agreed in November 2015 to engage in negotiation discussions regarding the possibility of a voluntary resolution of the claims asserted in the Litigation; and

**WHEREAS**, on May 25, 2016, the Parties participated in a mediation session of this matter in Washington D.C., which was conducted by experienced mediator Judge Stephen M. Orlofsky, and reached an accord resulting in this Agreement; and

**WHEREAS**, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendant in the Litigation, conducted interviews with Named Plaintiffs, obtained and reviewed documents relating to Defendant's compensation policies and practices, and analyzed payroll data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiffs.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions.

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1** "Claim Forms" shall mean the claim form attached to the Settlement Notice, as defined below, for Eligible Settlement Collective Members to opt-in to the litigation.

**1.2** "Claim Period" shall mean the later of: (i) the 90-calendar day period beginning immediately after the Settlement Administrator first mails and/or e-mails a Settlement Notice and Claim Form to any of the Eligible Settlement Collective Members; or (ii) fifteen (15) days from the Settlement Administrator re-mailing a Settlement Notice and Claim Form that was returned as undeliverable.[1]

**1.3** "Plaintiffs' Counsel" means Berger & Montague, P.C., Outten & Golden LLP, and Shavitz Law Group, P.A.

**1.4** "Court" means the United States District Court for the Northern District of Illinois.

**1.5** "Defendant" means CC Services, Inc.

**1.6** "Defendant's Counsel" means Jackson Lewis P.C.

---

[1] All time periods provided by this Agreement are stated in calendar days, not business days unless otherwise specifically identified.

**1.7** "Effective Date" means the date on which this Agreement becomes effective, which shall mean the later of (i) 30 days following the Court's Order Granting Approval of the Agreement if no appeal is taken of such Order, or (ii) the Court's entry of a final order and judgment after any appeals are resolved.

**1.8** "Eligible Settlement Collective Member" means any and all current and former employees employed by Defendant in the position of EFR, however variously titled, in the Eligible Training Period, as defined below, at any time from June 3, 2013, to July 15, 2016.

**1.9** "Eligible Training Period" means the time period of the Eligible Settlement Collective Member's employment with Defendant that is eligible for overtime payment pursuant to this Agreement. The Eligible Training Period covers the time period from an EFR's hire date through one week following the completion of CAL School 1, or her or his termination date, whichever is earlier.

**1.10** "Employee Financial Representative" or "EFR" means any employee of Defendant who held the position of Employee Financial Representative however variously titled at any time from June 3, 2013, to July 15, 2016.

**1.11** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

**1.12** "Gross Settlement Amount" means Two Million Eight Hundred Twenty-Five Thousand Dollars ($2,825,000.00), which is the maximum amount that Defendant has agreed to pay to fully resolve and settle this Litigation, including any claim for attorneys' fees and costs approved by the Court; any and all amounts to be paid to Participating Settlement Collective Members; the cost of settlement administration; and any Court-approved Service Awards. Defendant will not be required to pay any more than the gross total of Two Million Eight Hundred Twenty-Five Thousand Dollars ($2,825,000.00), except for the Employer Payroll Taxes, subject to section 3.4(v)(b) below.

**1.13** "Last Known Address" or "Last Known Addresses" means the most recently recorded personal mailing address for an Eligible Settlement Collective Member as shown in Defendant's records.

**1.14** "Last Known E-mail Address" or "Last Known E-mail Addresses" means the most recently recorded personal e-mail address for an Eligible Settlement Collective Member as shown in Defendant's records.

**1.15** "Last Known Telephone Number" or "Last Known Telephone Numbers" means the most recently recorded personal mobile or home telephone number for an Eligible Settlement Collective Member as shown in Defendant's records.

**1.16** "Litigation" or the "Lawsuit" or the "Action" mean the lawsuit entitled *Koszyk et al. v. Country Financial a/k/a CC Services, Inc.*, United States District Court for the Northern District of Illinois, No. 16 Civ. 3571. "Complaint" means the original Complaint dated

March 24, 2016. "Amended Complaint" means the First Amended Collective Action Complaint dated August 18, 2016.

**1.17**    "Named Plaintiffs" means Alan Koszyk, Andrew Noble, Luon Spearman, Kevin Griffin, Stanley Kincaid, Michael Terry, and Rakesh Chopra.

**1.18**    "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions/payments for Court-approved: (i) Settlement Administration fees and costs; (ii) Plaintiff's Counsel's attorneys' fees and costs; and (iii) Service Awards to Named Plaintiffs.

**1.19**    "Order Granting Approval of Settlement" or "Approval Order" means an order to be approved and entered by the Court, which gives final approval to the Settlement and this Agreement, and enters final judgment, in a form substantially similar to the Proposed Approval Order and Judgment Approving Settlement, attached hereto as Exhibit A.

**1.20**    "Participating Settlement Collective Members" means each Eligible Settlement Collective Member who timely executes and returns a Claim Form. Named Plaintiffs shall be considered Participating Settlement Collective Members regardless of whether they return a timely executed Claim Form.

**1.21**    "Parties" collectively means the Named Plaintiffs and Defendant.

**1.22**    "Plaintiffs" means the Named Plaintiffs and the collective of individuals that they seek to represent.

**1.23**    "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Administrator from the Gross Settlement Amount paid by Defendant. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's Order(s). Interest, if any, earned on any monies in the QSF will become part of the Net Settlement Fund.

**1.24**    "Releasees" means Defendant and the other companies that comprise COUNTRY Financial® and their officers, directors, employees, agents, insurers, successors, predecessors, affiliates, parents, subsidiaries, attorneys, and other related entities.

**1.25**    "Settlement" means the settlement between the Parties embodied and contained in this Agreement.

**1.26**    "Settlement Administrator" means Rust Consulting.

**1.27**    "Agreement" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

**1.28**    "Settlement Amount" or "Settlement Amounts" means each Eligible Settlement Collective Member's proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

1.29    "Settlement Check" means the check issued to Participating Settlement Collective Members for their proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

1.30    "Settlement Notice" means the document entitled Notice of Settlement and Opportunity to Join Collective Action and Claim Form, to be approved by the Court in a form substantially similar to Exhibit B attached hereto.

2.    **APPROVAL AND NOTICE TO ELIGIBLE SETTLEMENT COLLECTIVE MEMBERS**

2.1    Binding Agreement.  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

2.2    Duties of the Settlement Administrator.   The Settlement Administrator will be responsible for establishing a QSF account; preparing and mailing the Settlement Notice and reminder postcards to Eligible Settlement Collective Members; preparing and mailing Settlement Checks; distributing approved Service Awards and attorneys' fees and expenses; calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; retaining and providing a copy of Settlement Checks and redacted Claim Forms signed by the Participating Settlement Collective Members to Defendant's Counsel, and a copy of Claim Forms signed by Participating Settlement Collective Members to Plaintiffs' Counsel.

2.3    The Parties will have equal access to the Settlement Administrator and all information related to the administration of the Settlement, except that identifying information regarding Plaintiffs shall not be disclosed to Plaintiffs' Counsel unless and until such time as an individual submits an opt-in form to the Settlement Administrator.  The Settlement Administrator shall provide such information to either Party upon request. The Settlement Administrator will provide regular reports to counsel for the Parties regarding the status of the mailing of the Settlement Notice and Claim Form, the claims administration process, and distribution of the Settlement Checks.

2.4    Defendant agrees to cooperate with the Settlement Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Amounts, and assist the Settlement Administrator in locating Eligible Settlement Collective Members.

2.5    The Plaintiffs shall use their best efforts to file a Motion for Order Approving Settlement of Collective Action and Authorizing Notice of Settlement and Opportunity to Join Collective Action ("Approval Motion") by September 2, 2016.  Plaintiffs' Counsel will provide Defendant with a draft of the Approval Motion for review and comment at least seven (7) days prior to filing it with the Court, and Defendant will provide Plaintiffs' Counsel with their comments within five (5) days of receiving the draft Approval Motion.  With the Approval Motion, Plaintiffs' Counsel also will file the Agreement, Approval Order, and Settlement Notice and Claim Form, attached hereto as

Exhibits A and B, respectively. Among other things, the Approval Motion will ask the Court to: (i) issue and enter the Approval Order approving the Settlement as fair, adequate, and reasonable, (ii) approve the proposed Settlement Notice to be sent to Eligible Settlement Collective Members and the Settlement Notice distribution process, (iii) incorporate the terms of this Settlement, and (iv) enter Judgment dismissing the case without prejudice, with leave to reinstate on or before 180 days after the first Settlement Notices are sent pursuant to the terms of the Settlement and in the event a motion to reinstate is not filed on or before 180 days after the first Settlement Notices are sent, the case shall be deemed, without further order of the Court, to be dismissed with prejudice; (v) retain jurisdiction to enforce the Agreement.

2.6    Within five (5) days after the Effective Date, Defendant shall give the Settlement Administrator a list, in electronic form, of the names, Last Known Addresses, Last Known E-mail Addresses, Last Known Telephone Numbers, social security numbers, and the dates of employment of each Eligible Settlement Collective Member's employment during the Eligible Training Period from June 3, 2016, to July 15, 2016 ("Collective List").

2.7    Settlement Notices will be mailed, via e-mail and First Class United States Mail (with an enclosed, postage paid return envelope) to Eligible Settlement Collective Members by the Settlement Administrator within twenty (20) days of the Effective Date.

2.8    The Settlement Administrator shall take all reasonable steps to obtain the correct address for any Eligible Settlement Collective Member or Participating Settlement Collective Member for whom the Settlement Notice or Settlement Check is returned by the post office as undeliverable, respectively, including using social security numbers to obtain better address information, and shall attempt re-mailings. Any Settlement Notices or Settlement Check returned as undeliverable shall be traced up to two times to obtain a new address and be re-mailed by First Class United States Mail.

2.9    The Settlement Administrator will also send reminder postcards via e-mail and First Class U.S. Mail thirty (30) days and sixty (60) days after the initial mailing of the Settlement Notice to any Eligible Settlement Collective Members who, at the time of mailing the reminder postcard, have not returned an executed Consent Form.

2.10   The proceeds of the Net Settlement Fund shall be disbursed (pursuant to Section 3.4 below) to Participating Settlement Collective Members.

      i.    To be timely, a Claim Form must be completed and provide the information as instructed on the Claim Form and be signed, dated and postmarked or otherwise returned (via, for example, fax or e-mail) to the Settlement Administrator within the Claim Period. Claim Forms that are not timely returned are null and void, unless otherwise agreed to in writing by the Parties or approved by the Court.

     ii.    If a Claim Form is returned to the Settlement Administrator and not properly completed as described above, within five (5) business days of its

receipt, the Settlement Administrator shall send a notice to this Eligible Settlement Collective Member via First Class United States Mail and e-mail of the defects ("Cure Letter") and include a new Claim Form to be completed. The Settlement Administrator shall provide Plaintiffs' Counsel with a copy of the Cure Letter for approval prior to its issuance. The Eligible Settlement Collective Member shall then have the remainder of the Claim Period or fifteen (15) days from mailing of the Cure Letter ("Cure Period"), whichever is longer, to return the new Claim Form and provide the missing information. If a Claim Form is not received within that period, the Claim Form shall be null and void, unless otherwise agreed to in writing by the Parties or approved by the Court.

iii. By the close of the Claim Period, Eligible Settlement Collective Members for whom a Claim Form has not been returned to the Claims Administrator or whose Claim Form is not a valid Claim Form in compliance with this Section are not Participating Settlement Collective Members and do not release their claims against the Releasees as described in Section 4 below, but do waive any right to receive any payment associated with the Settlement.

2.11   Plaintiffs' Counsel and Defendant's Counsel have the right to make inquiries and receive any information from the Settlement Administrator related to the claims administration process, except that Defendant's Counsel is not entitled to updated contact information located by Settlement Administrator for Eligible Settlement Collective Members or provided by Participating Settlement Collective Members, or communications sent to and from Eligible Settlement Collective Members as such communications are subject to the attorney-client privilege. The Settlement Administrator will periodically update Plaintiffs' Counsel and Defendant's Counsel regarding returned mailings for which it is unable to obtain corrected addresses.

2.12   Effect of Court Failure to Approve Settlement. In the event that the Court fails to approve this Agreement, the Parties (a) must attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated Settlement and Agreement (b) and/or either or both Parties may seek reconsideration or appellate review of the decision denying approval of the Agreement. In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the Litigation will proceed as if no settlement had been attempted. In that event, nothing in the Settlement or Agreement may be used by or against any Party under Rule 408 of the Federal Rules of Evidence.

## 3.   SETTLEMENT TERMS

### 3.1   Settlement Payments

i. Defendant agrees to pay Two Million Eight Hundred Twenty-Five Thousand Dollars ($2,825,000.00), which shall fully resolve and satisfy

any and all amounts to be paid to Participating Settlement Collective Members, any Court-approved Service Awards as more fully set forth herein, the Settlement Administrator's fees and costs and any claim for Plaintiffs' Counsel's fees and costs. Defendant will not be required to pay more than this amount under the terms of this Agreement, with the exception of Employer Payroll Taxes, subject to section 3.4(v)(b) below.

ii.   Within ten (10) days of the Effective Date, Defendant shall deposit the Gross Settlement Amount into the QSF.

iii.  Within fifteen (15) days of the Effective Date, the Settlement Administrator will distribute the money in the QSF by making the following payments:

(a)   Paying Plaintiffs' Counsel's Court-approved attorneys' fees and costs as described in Section 3.2.

(b)   Paying the Court-approved Service Awards as described in Section 3.3.

(c)   Paying the costs of the Settlement Administrator as described in Section 3.1.

iv.   Within thirty (30) days of the later of the close of the Claim Period or Cure Period, the Settlement Administrator will pay Participating Settlement Collective Members their Settlement Amounts as described in Section 3.4.

**3.2   Settlement Amounts Payable as Attorneys' Fees and Costs.**

i.    In their Approval Motion, Plaintiffs' Counsel shall ask the Court to approve payment of one-third of the Gross Settlement Amount as an award of attorneys' fees. In addition, Plaintiffs' Counsel shall seek reimbursement of reasonable actual case-related costs and expenses from the Gross Settlement Amount. These amounts shall constitute full satisfaction of any claim for attorneys' fees or costs, and Plaintiffs agree that they shall not seek, nor be entitled to, any additional attorneys' fees or costs under any theory or from any source, incurred in relation to this case.

ii.   The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. In the event that the Court (or any appellate court) awards less than the requested amounts, only the awarded amounts shall be paid and shall constitute full satisfaction of the

obligations of this Section and full payment hereunder. Any money requested for attorneys' fees or costs that is not approved by the Court shall become part of the Net Settlement Fund.

**3.3     Service Awards to Named Plaintiffs.**

    i.    In their Approval Motion, Named Plaintiffs will apply to the Court to receive $10,000 each from the Gross Settlement Amount for the services they rendered to Plaintiffs.

    ii.    These Service Awards and any requirements for obtaining any such payment are separate and apart from, and in addition to, Named Plaintiffs' recovery from the Net Settlement Fund as an Eligible Settlement Collective Member. The substance of the Named Plaintiffs' application for a Service Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the Settlement and this Agreement. The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. Any Service Award money not approved by the Court shall become part of the Net Settlement Fund.

**3.4     Distribution of Payments to Participating Settlement Collective Members.**

    i.    Payments to Participating Settlement Collective Members will be made from the Net Settlement Fund. To be a Participating Settlement Collective Member and receive a Settlement Check, each Eligible Settlement Collective Member must fill out and timely submit a Claim Form, as outlined in Section 2.10. The estimated Settlement Amount for each Eligible Settlement Collective Member will be determined by the Settlement Administrator pursuant to the following formula:

        (a)    Each Eligible Settlement Collective Member, including the Named Plaintiffs, shall be assigned one point for each week in which the individual was employed during an Eligible Training Period.

        (b)    To calculate each Eligible Settlement Collective Member's proportionate Settlement Amount:

            1.    Add all points for all Eligible Settlement Collective Members together to obtain the "Denominator";

            2.    Divide the number of points for each Eligible Settlement Collective Member by the Denominator to obtain each Eligible Settlement Collective Members' "Portion of the Net Settlement Fund";

        3.     Multiply each Eligible Settlement Collective Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Eligible Settlement Collective Member's Settlement Amount.

ii.     The Settlement Administrator's calculations regarding Eligible Settlement Collective Members' Settlement Amounts from the Net Settlement Fund will be final and binding.

iii.     The Settlement Administrator shall mail to all Participating Settlement Collective Members their Settlement Checks, less proper tax withholdings, within thirty (30) days of the later of the close of the Claim Period or Cure Period. The Settlement Administrator shall use reasonable efforts to make an additional mailing to Participating Settlement Collective Members whose checks are returned because of incorrect addresses. Such efforts shall include: (a) obtaining correct addresses as described in Section 2.8; (b) use social security numbers to obtain better address information; and/or (c) attempt to reach Participating Settlement Collective Members by phone.

iv.     Participating Settlement Collective Members shall have ninety (90) days following the issuance of Settlement Checks to negotiate their Settlement Checks. Any Settlement Checks not cashed within that period shall become void and shall become a part of the reversion to Defendant. The Settlement Administrator shall issue a reminder postcard via e-mail and First Class United States Mail forty-five (45) days after issuance of Settlement Checks to those Participating Settlement Collective Members who, at the time of mailing the reminder postcard, have yet to negotiate their Settlement Checks, reminding them of the deadline to negotiate their Settlement Checks.

v.     Defendant's Payroll Tax Responsibility and Tax Characterization of Payments.

     (a)     For tax purposes, 50% of the payment to a Participating Settlement Collective Member pursuant to this Agreement shall be treated as back wages and 50% of such payment shall be treated as interest, any applicable penalties, liquidated damages and other non-wage relief.

     (b)     Defendant's share of payroll taxes shall not come out of the Gross Settlement Amount. Rather, Defendant's share of payroll taxes shall be paid by Defendant in addition to the sum of the Gross Settlement Amount. In the event that the opt-in rate equals or exceeds 90% of the potential Plaintiffs, Defendant's share of payroll taxes shall instead be paid from the Gross Settlement Amount.

(c)     Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2. Payments treated as Service Awards, interest and/or liquidated damages shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security number on an IRS Form 1099. The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, issuing the Settlement Checks and Service Awards and issuing IRS Forms W-2 and Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding, and be reported to the IRS and to each of Plaintiffs' Counsel payees under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

(d)     The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Participating Settlement Collective Member receiving a Settlement Check or Service Award. The Parties make no representations, and it is understood and agreed that the Parties have made no representations, as to the taxability of any portions of the settlement payments to any Participating Settlement Collective Members, the payment of any costs or award of attorneys' fees, or any payments to the Named Plaintiffs. The Settlement Notice will advise Eligible Settlement Collective Members to seek their own tax advice prior to acting in response to that Settlement Notice. Neither Plaintiffs' Counsel nor Defendant's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

(e)     None of the amounts paid to the Named Plaintiffs or Participating Settlement Collective Members shall create any credit for, be included in, or otherwise affect the calculation or the accrual of any employee benefits in any plans, programs, agreements or policies sponsored, maintained or contributed to by Defendant, including for purposes of any bonus of any kind.

## 4.     RELEASE OF CLAIMS

**4.1**     Release by Participating Settlement Collective Members:  Conditioned upon the Court's entry of the Approval Order, and in exchange for the monetary consideration recited in

this Agreement, all Participating Settlement Collective Members shall release Releasees from: (i) all claims through July 15, 2016, related to overtime or overtime pay under the FLSA or any state Wage and Hour law, whether known or unknown, that were or could have been asserted in the Litigation and/or this matter, arising from that Participating Settlement Collective Member's employment as an EFR from the date of hire through one week following the completion of CAL School 1, or the EFR's termination date, whichever is earlier; and (ii) all claims for wages, penalties, liquidated damages, interest, attorneys' fees, costs or litigation expenses based on the claims listed in (i) above. The claims being released are referred to in this Agreement as "Released Claims".

**4.2**  Any Eligible Settlement Collective Member who does not timely execute and return a Claim Form will not be bound by any release of claims.

**4.3**  Release by Named Plaintiffs: All Named Plaintiffs who receive a Service Award will additionally waive, release and discharge Releasees from all demands, claims and actions, whether known or unknown, relating to their employment or termination of employment with Defendant, including but not limited to claims under the Americans With Disabilities Act, National Labor Relations Act, Fair Labor Standards Act (including but not limited to claims for overtime compensation) Equal Pay Act, Employee Retirement Income Security Act of 1974, Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, Civil Rights Acts of 1866, 1871 and 1991, Family and Medical Leave Act, and any other federal, state or local statute, regulation, and order, and in common law, through the date the respective Named Plaintiff signs this Agreement; provided, however, that Named Plaintiffs do not waive the right to file a charge or complaint with any administrative agency but they do waive any right to recover any damages or other personal relief based on any demand, claim or action waived in this Paragraph brought on their own behalf or by any third party, including as a member of any collective or class action. Named Plaintiffs do not release any claim that cannot be released as a matter of law or rights under this Agreement.

**4.4**  By signing the Agreement, Named Plaintiffs become parties to the Agreement.

**5.  LIMITED CONFIDENTIALITY**

**5.1**  With the exception of Court filings, the Parties and their respective counsel will keep the Settlement and the terms of this Agreement confidential until the Court enters an Approval Order ("Confidentiality Period") except that Plaintiffs and Plaintiffs' Counsel can respond to questions from Eligible Settlement Collective Members and others who believe they should be considered Eligible Settlement Collective Members. During the Confidentiality Period, the Parties and their respective counsel will not publicize the settlement in any manner whatsoever, including without limitation through print, radio, television, or social media. If contacted by the media during the Confidentiality Period, the Parties and Counsel will say only that, "The Parties have worked together to reach a fair resolution of this dispute" or words to that effect.

## 6.  NON-DISPARAGEMENT

**6.1**  Named Plaintiffs and Defendant will not make any disparaging or negative remarks about the other.  The Parties agree that Defendant may satisfy this obligation by instructing the agency manager for each of the Named Plaintiffs and all management level employees at the locations in which Named Plaintiffs were employed to comply with this provision.  However, nothing in this Agreement prohibits any individual from providing information to, filing a complaint or charge with, or cooperating with any administrative agency, court or other governmental entity.

## 7.  TOLLING AGREEMENT

**7.1**  The Parties tolled the statutes of limitations for EFRs with respect to FLSA claims and state law wage and hour claims by agreement dated December 28, 2015 ("Tolling Agreement").  The Tolling Agreement shall remain in effect until the Effective Date.  Upon the Effective Date, the Tolling Agreement shall be void *ab initio* without any further force or effect as though the Parties never entered into it.  However, nothing in this Section shall be construed to limit the definition of "Eligible Settlement Collective Members" herein or to reduce Eligible Settlement Collective Members Settlement Amounts as defined herein.

## 8.  PARTIES' AUTHORITY

**8.1**  The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

## 9.  MUTUAL COOPERATION

**9.1**  The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement.  The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.  As soon as practicable after execution of this Agreement, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendant and its counsel, take all necessary steps to secure the Court's approval of this Agreement.

## 10.  NOTICES

**10.1**  Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs and/or Settlement Collective:

Shanon J. Carson
Sarah R. Schalman-Bergen
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
 (215) 875-4604 (facsimile)
scarson@bm.net
sschalman-bergen@bm.net

Justin M. Swartz
Melissa L. Stewart
Outten & Golden LLP
3 Park Ave, 29th Floor
New York, NY 10016
(212) 245-1000
(646) 509-2057 (facsimile)
jms@outtengolden.com
mstewart@outtengolden.com

Gregg I. Shavitz
Paolo Meireles
Shavitz Law Group, P.A.
1515 South Federal Hwy.
Suite 404
Boca Raton, FL 33432
(561) 447-8888
(561) 447-8831 (facsimile)
gshavitz@shavitzlaw.com
pmeireles@shavitzlaw.com

To Defendant:

Paul DeCamp
Jackson Lewis P.C.
10701 Parkridge Blvd., Suite 300
Reston, VA 20191
(703) 483-8305
(703) 483-8301 (facsimile)
DeCampP@jacksonlewis.com

## 11.    NO ADMISSION OF LIABILITY

**11.1**    Defendant denies all of the allegations made by Named Plaintiffs in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation.  Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the

terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation.

## 12. INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

**12.1** Further Acts.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**12.2** No Assignment.  Named Plaintiffs' represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.

**12.3** Entire Agreement.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**12.4** Binding Effect.  This Agreement shall be binding upon the Parties and, with respect to Defendant, their affiliates, parents, subsidiaries, predecessors, successors, employees and agents; and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**12.5** Arms' Length Transaction; Materiality of Terms.  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**12.6** Captions.  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**12.7** Construction.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**12.8** Governing Law.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Illinois, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**12.9** Continuing Jurisdiction.  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**12.10** Waivers, etc. to Be in Writing. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment, with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement

**12.11** Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**12.12** Facsimile and E-mail Signatures. Any party may execute this Agreement by signing, including by electronic means, or by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or e-mail to counsel for the other party. Any signature made and transmitted by facsimile or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or e-mail.

**12.13** Signatories. This Agreement is valid and binding if signed by Defendant's authorized representative and any one of the Named Plaintiffs.

**WE AGREE TO THESE TERMS.**

DATED: _8/26/16_

CC SERVICES, INC.

By: _____

Its: Executive VP and Chief malltg officer

DATED: _____

**ALAN KOSZYK**

_____

**12.10** Waivers, etc. to Be in Writing. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment, with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement

**12.11** Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**12.12** Facsimile and E-mail Signatures. Any party may execute this Agreement by signing, including by electronic means, or by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or e-mail to counsel for the other party. Any signature made and transmitted by facsimile or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or e-mail.

**12.13** Signatories. This Agreement is valid and binding if signed by Defendant's authorized representative and any one of the Named Plaintiffs.

**WE AGREE TO THESE TERMS.**

DATED: _____       **CC SERVICES, INC.**

                              By: _____

                              _____


DATED: _8/18/2016_            **ALAN KOSZYK**

                              _Alan Koszyk_
                              _____

DATED: _____8/18/2016_____      **ANDREW NOBLE**

*Andrew Noble*

_____

DATED: _____      **LUON SPEARMAN**

_____

DATED: _____      **KEVIN GRIFFIN**

_____

DATED: _____      **STANLEY KINCAID**

_____

DATED: _____      **MICHAEL TERRY**

_____

DATED: _____      **RAKESH CHOPRA**

_____

DocuSign Envelope ID: ECBAE85E-AE75-47CF-873A-D74A82706EBC

DATED: _____     **ANDREW NOBLE**

_____

DATED: _8/18/2016_     **LUON SPEARMAN**

_____

DATED: _____     **KEVIN GRIFFIN**

_____

DATED: _____     **STANLEY KINCAID**

_____

DATED: _____     **MICHAEL TERRY**

_____

DATED: _____     **RAKESH CHOPRA**

_____

DocuSign Envelope ID: AB0D1317-2983-4B4D-ACCC-C90C5CCA6FFE

DATED: _____  **ANDREW NOBLE**

_____

DATED: _____  **LUON SPEARMAN**

_____

DATED: _8/22/2016_  **KEVIN GRIFFIN**

_____

DATED: _____  **STANLEY KINCAID**

_____

DATED: _____  **MICHAEL TERRY**

_____

DATED: _____  **RAKESH CHOPRA**

_____

DATED: _____     **ANDREW NOBLE**

_____

DATED: _____     **LUON SPEARMAN**

_____

DATED: _____     **KEVIN GRIFFIN**

_____

DATED: ___8/23/2016___     **STANLEY KINCAID**

_Stanley Kincaid_  _____
A5B6689324EA425...

DATED: _____     **MICHAEL TERRY**

_____

DATED: _____     **RAKESH CHOPRA**

_____

DocuSign Envelope ID: 7FDD6338-4568-45F6-B9D0-7450D3F09376

DATED: _____     **ANDREW NOBLE**

_____

DATED: _____     **LUON SPEARMAN**

_____

DATED: _____     **KEVIN GRIFFIN**

_____

DATED: _____     **STANLEY KINCAID**

_____

DATED: _8/23/2016_     **MICHAEL TERRY**

DocuSigned by:
*Michael Terry*  _____
3393884771CD486...

DATED: _____     **RAKESH CHOPRA**

_____

DATED: _____     **ANDREW NOBLE**

_____

DATED: _____     **LUON SPEARMAN**

_____

DATED: _____     **KEVIN GRIFFIN**

_____

DATED: _____     **STANLEY KINCAID**

_____

DATED: _____     **MICHAEL TERRY**

_____

DATED: _8/24/2016_     **RAKESH CHOPRA**

DocuSigned by:

_____
8819F342731C4BA...

# Exhibit A

<u>**EXHIBIT A**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

```
------------------------------------------------------------------- :
ALAN KOSZYK, ANDREW NOBLE, LUON SPEARMAN, :
KEVIN GRIFFIN, STANLEY KINCAID, MICHAEL        :   No. 16 Civ. 3571
TERRY, and RAKESH CHOPRA, individually and on behalf :
of all others similarly situated,              :
                                               :
                        Plaintiffs,            :
                                               :
                - against -                    :
                                               :
COUNTRY FINANCIAL a/k/a CC SERVICES, INC.,     :
                                               :
                        Defendant.             :
------------------------------------------------------------------- :
```

**[PROPOSED] ORDER APPROVING SETTLEMENT, SERVICE AWARDS,
AND ATTORNEYS' FEES AND COSTS**

The above-entitled matter came before the Court on Plaintiffs' Motion for Approval of

Settlement, Service Awards, and Attorneys' Fees and Costs ("Motion for Settlement Approval").

After reviewing the Motion for Settlement Approval, the supporting Memorandum of Law in

Support of the Motion for Settlement Approval (the "Memorandum"), and the Declaration of

Justin M. Swartz ("Swartz Decl.") and supporting exhibits, the Court hereby finds as follows:

**<u>The Settlement is Approved</u>**

1.      The Court approves and incorporates by reference all of the definitions contained

in the Settlement Agreement.

2.      The Court hereby approves the $2,825,000.00 settlement.  Courts approve FLSA

settlements when they are reached as a result of contested litigation to resolve bona fide disputes.

*See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982);

*Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010); *see also Butler*

*v. Am. Cable & Telephone, LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *8-9 (N.D. Ill. Oct. 6, 2011). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *2 (N.D. Ind. Sept. 25, 2014). "It is a well settled principle that the law generally encourages settlements." *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979).

3.    Here, the settlement meets the standard for approval. The settlement was the result of contested litigation with substantial informal discovery, and arm's-length negotiations. Recognizing the uncertain legal and factual issues involved, the parties reached their settlement after attending private mediation before an experienced mediator. At all times during the settlement negotiation process, negotiations were conducted at arm's-length.

**The Settlement Procedure Is Approved**

4.    A one-step settlement approval process is appropriate. *See, e..g, Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (approving one-step approval process). Collective actions under 29 U.S.C. § 216(b) require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions. *Beckman v.*

2

*KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013); *see also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions).

5.      The Settlement Notice attached to the Settlement Agreement is approved. Plaintiffs shall make any necessary corrections to the dates in the Settlement Notice. The Settlement Notice sufficiently informs Eligible Settlement Class Members of the terms of the settlement, including the allocation formula, how Class Members may participate (or not participate), the estimated amount to which they are entitled, the scope of the release, and the request for attorneys' fees and costs. *See Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014) (approving class notice that, *inter alia*, described settlement terms and fee allocation); *Tobin v. Beer Capitol Distributing Inc.*, No. 12 Civ. 274, 2012 WL 5197976, at *3 (E.D. Wis. Oct. 19, 2012) (same); *see also Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving FLSA notice providing notice of settlement terms and options facing class).

6.      The plan for sending the Settlement Notice as proposed by Plaintiffs is approved.

**The Service Awards Are Approved**

7.      Service awards of $10,000 each to Named Plaintiffs are approved. The amount shall be paid from the Gross Settlement Amount. Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). This is especially true in employment litigation. *See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25,

2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (internal quotation marks omitted)); *see generally* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006).

8.     Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *See, e.g.*, *Espenscheid*, 688 F.3d at 876-77; *Cook*, 142 F.3d at 1016; *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012); *cf. Follansbee v. Discover Fin. Servs., Inc.*, No. 99 Civ. 3827, 2000 WL 804690, at *7 (N.D. Ill. June 21, 2000) (recognizing the importance of incentive awards). Accordingly, service payments are commonly awarded to those who serve the interests of the class. *Massiah*, 2012 WL 5874655, at *8 (collecting cases); *accord Chesemore v. Alliance Holdings, Inc.*, No. 09 Civ. 413, 2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011).

9.     In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA*

4

*Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012). Here, Plaintiffs satisfy all three factors.

10.     First, the Named Plaintiffs took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit to those potential collective action members. They participated in an extensive pre-suit investigation, provided documents crucial to establishing Plaintiffs' claims, and assisted Plaintiffs' counsel in analyzing documents during the informal discovery process. Courts in this circuit and others have approved incentive awards for similar activities. *See, e.g.*, *Chesemore*, 2014 WL 4415919, at *5, *12  ($10,000 and $25,000 awards for, *inter alia*, submitting to discovery and participating in settlement discussions); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 WL 3778173, at *16 (S.D.N.Y. July 31, 2014) ($10,000 awards where, *inter alia*, "[p]laintiffs provided counsel with relevant documents and assisted counsel in preparing for mediation and settlement discussions"); *Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) ($10,000 awards where class representatives, *inter alia*, participated in discovery). These actions have resulted in substantial benefit to the class.

11.     Second, Plaintiffs undertook substantial direct and indirect risk. The Named Plaintiffs agreed to bring the action in their name, to be deposed if necessary, and to testify if there was a trial. In so doing, Named Plaintiffs assumed significant risk that "should the suit fail, [they could] find [themselves] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid*, 688 F.3d at 876-77 (internal citations omitted). "The incentive reward is designed to compensate [them] for bearing these risks." *Id*.

5

12. Third, Plaintiffs spent a significant amount of time and effort in pursuing this litigation on behalf of the Eligible Settlement Class Members. This included the time and effort they expended in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought, the time and effort they spent in assisting in the preparation and review of the complaint and assorted documents shared by Defendant in the informal discovery process, and helping prepare for the mediation. *See Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 105 (D.D.C. 2013) (class members benefited from named plaintiff's "sustained contributions" to the litigation, which resulted in a sizable ERISA common fund); *In re Sw. Airlines Voucher Litig.*, No. 11 Civ. 8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013), *appeal dismissed* (Jan. 3, 2014) (approving service award in part because "there is a solid basis to believe that discovery," in which named plaintiffs actively participated, "improved the prospects for a favorable settlement").

13. Accordingly, service awards of $10,000 each to Named Plaintiffs Alan Koszyk, Andrew Noble, Luon Spearman, Kevin Griffin, Stanley Kincaid, Michael Terry, and Rakesh Chopra for their service to the collective are approved.

**Fees and Costs of the Settlement Administrator and Attorneys Are Approved**

14. The Court approves of the Settlement Administrator's fees and costs of no more than $36,000.00.

15. The Court grants Plaintiffs' Counsel's request for one-third of the settlement, $941,666.67, as attorneys' fees.

16. In awarding attorneys' fees, courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th

Cir. 2001). District courts must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007). They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases . . . ." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

17.  Plaintiffs' request for one-third of the settlement in attorneys' fees is consistent with the market in the Northern District of Illinois. *Id.* at 600 (approving attorneys' fees based, *inter alia*, on "legal hurdles that lead counsel faced in proving liability") (citing *Donovan v. Estate of Frank E. Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985)). Plaintiffs' Counsel are experienced wage and hour class and collective action litigators and have achieved a positive result on behalf of the collective.

18.  Before initiating this litigation, Plaintiffs' Counsel agreed with the Named Plaintiffs to request no more than one-third of any (at that time uncertain) future recovery. Thus, the Court knows what private plaintiffs "would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)," *In re Synthroid*, 264 F.3d at 718, 720, because the Named Plaintiffs contracted for Plaintiffs' Counsel to be compensated with the amount Plaintiffs' Counsel now seek, *see In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015) (stating "presumption of market-rate reasonableness" would have attached if parties had "established[ed] a fee structure at the outset of [the] lawsuit").

19.  It was reasonable for the Named Plaintiffs to contract for one-third of the settlement fund to be paid to Plaintiffs' Counsel. In the Northern District of Illinois, class and

collective action employment lawyers routinely contract to receive one-third of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery. In addition, one-third is the standard contingent percentage that employment lawyers in the Northern District of Illinois charge individual clients. These multiple data points, confirming that plaintiffs routinely are willing to agree to a one-third contingency fee arrangement, reinforces that Plaintiffs' Counsel are requesting the proper market rate. *See In re Synthroid*, 325 F.3d at 976.

20. Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements. *See, e.g.*, *Taubenfeld*, 415 F.3d at 599-600 (noting class actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d at 842 (awarding fees on one-third common fund); *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995) (same and noting that "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"); 3 Alba Conte *et al.*, *Newberg on Class Actions* § 14.6 (4th ed. 2002) ("[F]ee awards in class actions average around one-third of the recovery[.]").

21. Plaintiffs' Counsel's decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Plaintiffs' Counsel faced. At the outset of the litigation, Plaintiffs' Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Plaintiffs. *Taubenfeld*, 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees). Plaintiffs' Counsel took this case on a contingent basis,

meaning that there was a strong risk that they would not be paid. *See Sutton*, 504 F.3d at 693-94 ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Plaintiffs' Counsel also faced significant legal hurdles in establishing certification and proving liability. As the Seventh Circuit has noted, Plaintiffs' Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).

22.     Plaintiffs' Counsel's request for reimbursement of $12,641.88 in actual out-of-pocket expenses incurred in prosecuting this case, including costs for case-related travel, electronic research, court fees, court reporters, postage and courier fees, working meals, photocopies, telephone calls, travel, and Plaintiffs' portion of the mediator's fees, is granted. The Court finds these costs to be reasonably incurred.

### Dismissal and Post-Judgment Procedure

23.     This case is dismissed without prejudice, with leave to reinstate on or before 180 days after the first Settlement Notices are sent pursuant to the terms of the Settlement and in the event a motion to reinstate is not filed on or before 180 days after the first Settlement Notices are sent, the case shall be deemed, without further order of the Court, to be dismissed with prejudice.

24.     The Court will retain jurisdiction over this action for the purposes of enforcing the Settlement Agreement.

25.     The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this ___ day of _____, 2016

_____
Honorable Charles R. Norgle, Sr.

United States District Judge

# Exhibit B

**EXHIBIT B**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
*Koszyk, individually and on behalf of all other persons similarly situated v. COUNTRY Financial a/k/a CC Services, Inc.,* No. 16 Civ. 3571

**OFFICIAL COURT NOTICE OF SETTLEMENT AND OPPORTUNITY TO JOIN**

[NAME]
[ADDRESS]
[CITY, STATE ZIP]

---

**If you were an Employee Financial Representative employed by CC Services, Inc., you may be entitled to a payment from a collective lawsuit settlement.**

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- This notice pertains to any individual employed by CC Services, Inc. ("Country"), as an Employee Financial Representative ("EFR"), during a training period, between June 3, 2013, and July 15, 2016 (the time period covered by the lawsuit). For purposes of this notice, the "training period" begins with the date of hire and continues through one week following the completion of CAL School 1.

- Former EFRs have sued Country, alleging that during the training period, Country misclassified EFRs as exempt from overtime under federal laws and failed to pay them overtime compensation for all hours worked in excess of 40 per workweek. Country denies these allegations and the Court has not made any ruling on the merits of Plaintiffs' claims. The parties have entered into a settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expense.

- You are receiving this Notice because Country's records indicate you were employed as an EFR during the period covered by the lawsuit, and therefore you are eligible to participate in the settlement.

- Based on the formula discussed below, the total individual settlement amount you may be entitled to receive is estimated to be approximately **$[AMOUNT]**, subject to deductions for applicable taxes.

    As described more fully below, to participate in the settlement, you must mail a properly completed Consent to Join Settlement, Release, and Claim Form ("Claim Form") to the Settlement Claims Administrator so that it is post-marked or received by fax, email, or online submission by **[90 DAYS FROM DATE OF MAILING]**. If you fail to timely return a Claim Form post-marked or otherwise received by **[90 DAYS FROM DATE OF MAILING]**, you will not receive any money from the settlement.

**Your legal rights may be affected, and you have a choice to make:**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **RETURN THE CLAIM FORM** | By returning a properly completed Claim Form, you agree to participate in the settlement, receive a monetary settlement payment, and release your claims. |
| **DO NOT RETURN THE CLAIM FORM** | If you do not wish to participate in or be bound by the settlement, you should not return the Claim Form.  If you do not timely return a properly completed Claim Form postmarked or otherwise received by [**90 days from the mailing of Notice**], you will not receive a monetary settlement payment and will not release your claims. |

These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

## BASIC INFORMATION

**1.      WHY DID I GET THIS NOTICE?**

Country's records state that you worked as an EFR during the training period for one or more weeks between June 3, 2013, and July 15, 2016 (the period covered by the lawsuit).

The Court ordered that you be sent this notice because you have a right to know about the settlement of a collective action lawsuit in which you are eligible to participate.  This notice explains the lawsuit, the settlement, your legal rights, and what benefits are available.

The Court overseeing this case is the United States District Court for the Northern District of Illinois.  This lawsuit is known as *Koszyk, et al. v. COUNTRY Financial a/k/a CC Services, Inc.,* No. 16 Civ. 3571.  The people who filed the lawsuit are called the "Plaintiffs."  Country is called the "Defendant."

**2.      WHAT IS THIS LAWSUIT ABOUT AND WHY IS THERE A SETTLEMENT?**

The lawsuit is about whether during the training period, Country improperly classified EFRs as exempt employees who are not entitled to receive overtime under federal wage and hour laws and failed to pay them overtime premium pay for the time they worked in excess of 40 hours a week.

Defendant denies that it did anything wrong and believes that, during the training period, EFRs are properly compensated as employees who are exempt from overtime.  However, to avoid the burden, expense, and uncertainty of continuing litigation, the parties have agreed to this settlement.  The Court has not made any ruling on the merits of the Plaintiffs' claims, and no party has prevailed in this action.

2

3.      **WHAT IS A COLLECTIVE ACTION?**

In a "collective action," one or more people called "Named Plaintiffs" sue on behalf of people who have similar claims.  However, the other employees who have similar claims do not become part of the collective action until they "opt in" to the lawsuit.  You may "opt in" to the lawsuit and participate in the settlement by returning the enclosed Claim Form.  If you timely return the enclosed Claim Form, you will receive a settlement check.

4.      **WHAT ARE THE TERMS OF THE SETTLEMENT AGREEMENT?**

Country has agreed to pay up to $2,825,000.00 into a fund to settle the lawsuit and compensate EFRs who are covered by the settlement.  The Court has approved the following payments from the fund: (i) attorneys' fees and costs, in the amount of one-third of the settlement fund, and reasonable out-of-pocket costs; (ii) service awards to the Named Plaintiffs, in the aggregate amount of $70,000, in recognition of the risks they took and their service to the collective; and (iii) Settlement Claims Administrator's fees and costs, not to exceed $[AMOUNT].

5.      **HOW MUCH WILL MY PAYMENT BE AND HOW WAS IT CALCULATED?**

Based on the formula that has been approved by the Court, you will receive approximately **$[AMOUNT]**.

Half of this payment is subject to deductions for applicable taxes and withholdings like any other paycheck, for which you will receive a W-2, and half of the payment will be reported on a 1099.

The allocation formula takes into account the number of weeks you worked as an EFR during the period covered by the settlement.  The Settlement Agreement contains the exact allocation formula.  You may obtain a copy of the Settlement Agreement by contacting the Settlement Claims Administrator at the address listed below.

*Plaintiffs' Counsel and Defendants' Counsel do not make any representations concerning the tax consequences of this settlement or participation in it, and you are advised to seek your own personal tax advice prior to acting in response to this notice.*

6.      **HOW DO I MAKE A CLAIM?**

In order to join in the lawsuit and receive a payment under the settlement, you must complete, sign and mail, fax, or e-mail the enclosed Claim Form to the Settlement Claims Administrator at the address listed below.  You also may join this lawsuit by signing an electronic consent form at [WEBSITE], a site hosted by [SETTLEMENT CLAIMS ADMINISTRATOR].  If you sign electronically, your form will automatically be delivered via email to the law firm representing the Plaintiff.  **Your Claim Form must be postmarked or received by facsimile or email no later than [90 DAYS AFTER THE DATE NOTICE WAS SENT].**

The **Settlement Claims Administrator** – to whom all Claim Forms and questions should be directed – is:

**Country Financial Settlement**
**<ADDRESS>**
**<PHONE>**
**<FAX>**
**<WEBSITE>**
**<E-MAIL>**

The Settlement Claims Administrator will issue settlement checks to all EFRs who return timely Claim Forms, 30 days after the claim period ends. You will have 90 calendar days after the date your settlement check is issued to negotiate and cash your settlement check.

**7.      WHAT IS THE LEGAL EFFECT OF THE SETTLEMENT?**

If you return a properly completed Claim Form, you will become part of the collective action settlement.  Once you become part of the settlement, you cannot sue, continue to sue, or be a party in any other lawsuit against Country and other Releasees about any Released claims, as explained below.  It also means that all of the Court's orders will apply to you and legally bind you.

The "Releasees" are Country and its parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns.

The "Released claims" are all claims, through July 15, 2016, related to overtime or overtime pay under federal or state wage and hour law, that were or could have been asserted in the lawsuit, arising from your employment as an EFR from the date of your hire through one week following the completion of CAL School 1, and all claims for wages, penalties, liquidated damages, interest, attorneys' fees, costs or litigation expenses, related to such claims.

If you do not want to participate in, or be bound by, the settlement, you should not return the Claim Form.

**8.      DO I HAVE A LAWYER IN THIS CASE?**

The law firms of Outten & Golden LLP, Shavitz Law Group, P.A., and Berger & Montague, have been designated as legal counsel to represent you and other EFRs who participate in the settlement.  You will not be charged separately for these lawyers.  Their fees will be paid from the total settlement fund (as explained in Section 4 above).

**9.      HOW CAN I GET MORE INFORMATION?**

If you have additional questions about this Notice or want more information, you can contact the Settlement Claims Administrator, or Plaintiffs' Counsel at the addresses and/or telephone numbers below.

Outten & Golden LLP
Justin M. Swartz
Melissa L. Stewart
3 Park Avenue, 29th Floor,

4

New York, NY 10016
(212) 245-1000
CountryFinancialOvertimeSettlement@outtengolden.com

Shavitz Law Group, P.A.
Gregg Shavitz
Paolo Meireles
1515 S. Federal Hwy., Suite 404,
Boca Raton, FL 33432
(561) 447-8888
info@shavitzlaw.com

Berger & Montague, P.C.
Shanon J. Carson
Sarah R. Schalman-Bergen
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
info@bm.net

Dated:  [INSERT DATE]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

```
----------------------------------------------------------------- :
ALAN KOSZYK, ANDREW NOBLE, LUON SPEARMAN, :
KEVIN GRIFFIN, STANLEY KINCAID, MICHAEL          :   No. 16 Civ. 3571
TERRY, and RAKESH CHOPRA, individually and on behalf :
of all others similarly situated,                :
                                   Plaintiffs,   :
                                                 :
          - against -                            :
                                                 :
COUNTRY FINANCIAL a/k/a CC SERVICES, INC.,       :
                                                 :
                                   Defendant.    :
----------------------------------------------------------------- :
```

## CONSENT TO JOIN SETTLEMENT, RELEASE, AND CLAIM FORM

**The form must be returned to the Settlement Claims Administrator so that it is postmarked or received by facsimile or email by [90 DAYS FROM DATE OF MAILING].**

I hereby consent and opt-in to become a plaintiff for settlement purposes in a lawsuit brought under the Fair Labor Standards Act ("FLSA"), *Koszyk et al. v. Country Financial a/k/a CC Services, Inc.*, No. 16 Civ. 3571. I consent and agree to be bound by any adjudication of this action by the Court. I further agree to be bound by the collective action settlement approved by the Court. I hereby designate the law firms of Outten & Golden LLP; Shavitz Law Group, P.A.; and Berger & Montague, P.C. to represent me in this action. I understand that if I return this Claim Form, I will fully release Country and its parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns (the "Releasees") from all claims, through July 15, 2016, related to overtime or overtime pay under the FLSA or any state wage and hour law, that were or could have been asserted in this lawsuit, arising from my employment as an Employee Financial Representative ("EFR"), from the date of my hire through one week following the completion of CAL School 1, and all claims for wages, penalties, liquidated damages, interest, attorneys' fees, costs or litigation expenses, related to such claims.

_____    _____    _____

Name (print)                       Signature                          Date

_____

*Street Address

_____

*City, State and Zip Code

_____    _____

*Telephone Number                                   *Email Address

*This information will be redacted and will not be filed with the Court.